# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | |
|---|---|
| REBECCA A. PORTER,<br>KEREN A. PORTER,<br>YUET-YUEN CHAN CUSHING<br>& WENJU WANG, on behalf of<br>themselves and all others similarly<br>situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SU-YA CHIU &<br>GINZA PTC, LLC,<br><br>    Defendants/Third-Party Plaintiffs,<br><br>v.<br><br>ALVIN DAYRIT, aka ALVIN D.<br>BUNCAYO,<br><br>    Third-Party Defendant. | Civil Action No. 3:21-cv-00108-TCB |

## PLAINTIFFS' TRIAL BRIEF

Plaintiffs Rebecca A. Porter, Keren A. Porter, Yuet-Yuen Chan Cushing, and Wenju Wang (collectively "Plaintiffs"), hereby submit their Trial Brief in advance of the March 11, 2024 bench trial.

## I.    INTRODUCTION AND SUMMARY OF RELIEF SOUGHT

This case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and concerns Defendants' failure to lawfully pay Plaintiffs, unlawful withholding of Plaintiffs' tips, and Defendants' retaliation against Plaintiff Wang after he opposed Defendants' tip theft.  Liability has been established as to both Defendants on the majority of Plaintiffs' claims by virtue of the Court's Orders granting Plaintiffs' motions for partial summary judgment and default (Doc. 46). After Plaintiffs filed their motion for partial summary judgment on January 11, 2023 (Docs. 39, 40 & 41), defense counsel – who had been representing Defendants for over a year – abruptly withdrew (Doc. 43).  Defendants have thereafter failed to comply with two court orders (Docs. 44, 49) and have not participated in this action.

In its June 15, 2023 Order, the Court granted Plaintiffs' motion for partial summary judgment and for default (Doc. 46).  Liability, willfulness, and lack of good faith has been established as to both Defendants with respect to all Plaintiffs' claims for tip theft (Count I) and unpaid minimum and overtime wages (Counts II-III) (Doc. 46).  Liability has also been established against Defendant Ginza with respect to Plaintiff Wang's retaliation claim (Doc. 46).  Because both Defendants have failed to further participate in this action and abide by this Court's orders, including most recently the Court's November 7, 2023 Order (Doc. 49), the Court

should strike Defendant Su-Ya Chiu's Answer, establishing her liability on Count V as well.

In summary, Plaintiffs seek the following relief established by evidence, as set forth herein, provided by contemporaneous declarations, and further proven at trial:

a. **Plaintiff Rebecca A. Porter**: (1) unpaid wages in the amount of $16,477.23; (2) withheld tips in the amount of $23,550.79; and (3) liquidated damages in the amount of $40,028.02, for a total of $80,056.04.

b. **Plaintiff Keren A. Porter**: (1) unpaid wages in the amount of $18,379.98; (2) withheld tips in the amount of $22,668.27; and (3) liquidated damages in the amount of $41,048.25, for a total of $82,096.50.

c. **Plaintiff Yuet-Yuen Chan-Cushing**: (1) unpaid wages in the amount of $832.36; (2) withheld tips in the amount of $1,416.00; and (3) liquidated damages in the amount of $2,248.36, for a total of $4,496.72.

d. **Plaintiff Wenju Wang**: (1) unpaid wages in the amount of $7,582.17; (2) withheld tips in the amount of $10,910.68; (3) lost wages in the amount of $2,200.00; (4) liquidated damages in the amount of

$20,692.85; and (5) compensatory damages in the amount of $30,000.00, for a total of $71,385.70.

e. Plaintiffs further seek reasonable attorneys' fees and costs. The attorneys' fees and costs for the Radford Scott LLP firm as of the date of this filing are over $135,580.52. *See* Declaration of Justin M. Scott submitted herewith.

f. Lastly, Plaintiffs seek post-judgment interest at the applicable rate, pursuant to 28 U.S.C. § 1961.

## A.    Factual Summary

Plaintiffs are former employees of Defendants Su-Ya Chiu ("Chiu") and Ginza PTC, LLC ("Ginza") (collectively "Defendants"). Ginza was a restaurant formerly located in Peachtree City, Georgia, co-owned by Chiu and Alvin Dayrit ("Dayrit"). Chiu was the Owner and Manager of Ginza, and Dayrit was Ginza's Owner, Manager, and Executive (Sushi) Chef. Plaintiffs worked for Defendants as Servers. Plaintiff Rebecca A. Porter worked for Defendants from on or about December 16, 2016, until March 19, 2021; Plaintiff Keren Porter from on or about November 1, 2017, until March 23, 2021; Plaintiff Cushing from on or about January 8, 2021, until March 23, 2021; and Plaintiff Wang from on or about September 4, 2019, until December 31, 2020.

Chiu and Dayrit simultaneously managed Ginza's day-to-day operations. Chiu was primarily responsible for, *inter alia*, employee payroll, working with the accounting firm Triangle Accounting, Inc. ("Triangle") to process payroll, overseeing Ginza's financial records, creating and maintaining employee schedules, and maintaining orders and inventory, including overseeing the beer and wine inventory. Chiu had overall responsibility for the operation and success of Ginza.

Dayrit spent the vast majority of his time working behind the sushi bar. Additionally, Dayrit was primarily responsible for maintaining inventory and ordering food and other products for the kitchen. Both Chiu and Dayrit had supervisory authority over Ginza's employees and managed employees on a day-to-day basis, ensured employees clocked-in and out correctly, and evaluated employee performance. Chiu and Dayrit made the decisions regarding compensation for Servers when they opened the restaurant, and adopted and established Ginza's wage policies and procedures, including those related to hourly wages, overtime wages, tip credit, and tip pooling, based on their prior experiences working at another restaurant.

As Servers, Plaintiffs' job duties included waiting on tables, serving food and beverages, restocking the beverage cooler, setting and re-setting tables, cleaning and bussing tables, and maintaining the general cleanliness of the restaurant. Servers reported directly to Chiu and Dayrit. Defendants paid Plaintiffs and other Servers at

5

a regular subminimum wage rate of $3.00 per hour. When Defendants paid overtime, they did so at an overtime rate of $4.50 an hour. Overtime was calculated on a monthly, not weekly, basis. In addition to Servers, Defendants employed bussers, dishwashers, sushi bar helpers, and a kitchen chef.

When hiring employees, Defendants provided Servers with information regarding hourly wages, the mandatory tip pool, and credit card processing transaction fees, but did not provide an FLSA-compliant tip credit notice. Defendants specifically failed to notify their employees that a tip pool must be limited to employees who customarily and regularly receive tips. Instead, Defendants informed Plaintiffs and other Servers that the kitchen chef, dishwasher, busser, and Dayrit would be participating in the mandatory tip pool.

The tip pool was managed by Chiu and Dayrit, and included Plaintiffs and other Servers, bussers, dishwashers, the kitchen chef, sushi bar helpers, and the sushi chef, Dayrit, who was also an Owner and Manager of Ginza. Chiu, Dayrit, and the Servers kept track of the tips throughout the shift using a tip sheet. However, Chiu was primarily responsible for filling out the tip sheet on a day-to-day basis, and for reviewing the tip sheets at the end of each shift.

During the dinner shift, following a 3% deduction on credit card tips for credit card processing fees, Plaintiffs' tips were subjected to an additional 20% deduction, which deduction went "back to the house," which included Dayrit, the kitchen chef,

dishwashers, and bussers. A vast majority of the tips that went "back to the house" were retained by Dayrit. Dayrit simultaneously worked as the Sushi Chef and as an Owner and Manager of Ginza while participating in the tip pool. When Chiu waited on tables, Plaintiffs and other Servers were also required to split tips with her. The portion of the tips that were allocated to Chiu were then retained by Ginza, which Chiu owned.

During an evening shift, in approximately late December 2020, Plaintiff Wang was the only Server working, along with Chiu and Dayrit. On that particular evening, a customer picked up a to-go order and left a $40 tip. However, when Plaintiff Wang viewed the tip log later that evening, which was being maintained by Chiu, he noticed that only $20 of the customer's tip had been recorded in the log. In response, and due to the Defendants' ongoing unlawful wage practices, Plaintiff Wang approached Chiu and stated, "why do you steal our money?" and "I saw you steal our money," or words to that effect. Plaintiff Wang also complained that the $40 tip amount was incorrectly recorded in the tip log. Chiu then claimed that the additional $20 that she did not record was allegedly for employees working at the sushi bar that evening.

Approximately three (3) or four (4) evenings later, on or about December 31, 2020, Chiu terminated Plaintiff Wang's employment at the end of his shift. Chiu terminated Plaintiff Wang's employment in retaliation for his protected activity.

Approximately one week after the restaurant closed in March 2021, Defendants shred most of the paperwork related to tips and the tip sheets.

**B.    Outline of Claims**

Plaintiffs assert claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. (the "FLSA").  Following the Court's Order on summary judgment and default judgment, the issues to be tried to the Court are as follows:

1.    The amount of minimum wages to be awarded to Plaintiffs;

2.    The amount of overtime wages to be awarded to Plaintiffs;

3.    The amount of withheld tips to be awarded to Plaintiffs;

4.    The back wages to be awarded to Plaintiff Wang with respect to his retaliation claim;

5.    The liquidated damages to be awarded to Plaintiff Wang with respect to his retaliation claim;

6.    Whether, and to what extent, Plaintiff Wang is entitled to compensatory damages with respect to his retaliatory termination claim;

7.    The amount of liquidated damages to be awarded to Plaintiffs;

8.    The applicable pre-judgment and post-judgment interest; and

9.    The amount of expenses of litigation to be awarded to Plaintiffs, including reasonable attorneys' fees and costs.

## II.   APPLICABLE LEGAL STANDARDS, RELEVANT LAW, AND DAMAGES

### A.   Retaliation Claim Under the Fair Labor Standards Act Asserted by Plaintiff Wang

"The FLSA [] protects persons against retaliation for asserting their rights under the statute." *Pigford v. Flotel Inc.*, 2018 WL 10741753, at \*15 (N.D. Ga. Nov. 19, 2018), *report and recommendation adopted,* 2018 WL 10741755 (N.D. Ga. Dec. 10, 2018) (citing *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342 (11th Cir. 2000)); *Moakler v. Furkids, Inc.*, 374 F. Supp. 3d 1306, 1313 (N.D. Ga. 2019); *see also* 29 U.S.C. § 215(a)(3) ("it shall be unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint."). The purpose of the anti-retaliation provision is "to prevent fear of economic retaliation by an employer against an employee who [chooses] to voice such a grievance." *Moakler*, 374 F. Supp. 3d at 1313-14 (citing *E.E.O.C. v. White & Son Enterprises*, 881 F. 2d 1006, 1011-12 (11th Cir. 1989)).

"The Eleventh Circuit has interpreted the FLSA as protecting from retaliation employees who make internal 'informal complaints' to their employer about FLSA violations." *Johnson v. Advertiser Co.*, 778 F. Supp. 2d 1270, 1277 (M.D. Ala. 2011); *see Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011) (holding that the phrase "filed any complaint" in the anti-retaliation provision of the FLSA includes oral as well as written complaints); *see also Henderson v. City of*

*Grantville, Ga.*, 37 F. Supp. 3d 1278, 1282 (N.D. Ga. 2014) ("Unofficial, oral complaints are protected activity under the FLSA.") (citations omitted).   An employee is not required to mention the FLSA by name to engage in protected activity.  *Johnson*, 778 F. Supp. 2d at 1278.  "[A] plaintiff engages in statutorily protected activity when [he] protests an employer's conduct that is unlawful." *Pigford*, 2018 WL 10741753, at *16 (citing *Langston v. Lookout Mountain Cmty. Servs.*, 2017 WL 6612866, at *14 (N.D. Ga. Oct. 11, 2017), *report and recommendation adopted*, 2017 WL 6619236, at *10 (N.D. Ga. Nov. 13, 2017) (citation omitted)).

A plaintiff alleging FLSA retaliation must prove that he suffered an adverse action.  "[N]ot just any adverse action will do; to be adverse, an action taken by an employer must be material." *McAnally v. Alabama Plumbing Contractor LLC*, 2023 WL 2090277, at *5 (N.D. Ala. Feb. 17, 2023) (citing *Smith v. Haynes & Haynes P.C.*, 940 F. 3d 635, 648 (11th Cir. 2019).  To satisfy the requirement of materiality, the plaintiff must show that the defendant's conduct caused an injury that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. (citations omitted).

"To establish a causal connection between an employee's protected activity and an employer's adverse employment action, the employee must prove that he 'would not have been fired but for his assertion of FLSA rights.'" *Johnson*, 778 F.

Supp. 2d at 1279 (citing *Wolf*, 200 F.3d at 1343). Close temporal proximity between the adverse employment action and the protected activity is one method by which to establish a causal connection. *Id.* ("Three months appears to be the outer limit of the temporal proximity test."); *see Henderson v. City of Grantville, Ga.*, 37 F. Supp. 3d 1278, 1283 (N.D. Ga. 2014) (holding that a period of twelve days between the protected conduct and the adverse action was close enough to establish a causal connection). "If an employer takes an adverse employment action against an employee shortly after becoming aware of the employee's protected expression, then the close temporal proximity between the two events 'is generally sufficient for a plaintiff to establish but-for causation.'" *Stacey-Suggs v. Bd. of Regents of Univ. Sys. of Georgia*, 44 F. Supp. 3d 1262, 1287 (N.D. Ga. 2014) (citations omitted).

### 1.    Damages Available Under the FLSA Anti-Retaliation Provision

If an employer violates the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), the employer "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 933–34 (11th Cir. 2000) (citations omitted); *see also* 29 U.S.C. § 216(b). "The Eleventh Circuit has recognized that the evident purpose of the civil damages provision of the FLSA is to provide full compensation to the

plaintiff aggrieved by violations of the anti-retaliation provisions of the Act." *Bogacki v. Buccaneers Ltd. P'ship*, 370 F. Supp. 2d 1201, 1202 (M.D. Fla. 2005) (citing *Snapp*, 208 F.3d 928).

Although the damages provision does not expressly speak to compensatory damages, in addition to those damages listed within the statute, "[d]amages for mental anguish would be the necessary compensatory legal relief 'appropriate to effectuate the purposes of section 215(a)(3).'" *Id.* at 1203 (citing 29 U.S.C. § 216(b)); *see Moore v. Freeman*, 355 F.3d 558, 563–64 (6th Cir. 2004) (citing agreement with *Snapp's* reasoning and holding that emotional distress damages are an available form of compensatory relief under the FLSA); *see also Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1238 (11th Cir. 2013) (upholding jury's $30,000 compensatory damages award to Plaintiffs); *Bogacki,* 370 F. Supp. 2d at 1205 (M.D. Fla. 2005) (allowing plaintiff to amend her complaint to seek compensatory damages for emotional distress in an FLSA retaliation case); *Vaccaro v. Custom Sounds, Inc.*, 2010 WL 1223907, at *5 (M.D. Fla. Mar. 4, 2010), *report and recommendation adopted,* 2010 WL 1248841 (M.D. Fla. Mar. 24, 2010) (recommending an award of $5,000 in compensatory damages for plaintiff's emotional distress in an FLSA case).

**B.    Plaintiffs are Entitled to Damages in an Amount Equal to the Tip Credit Retained by Defendants Due to Defendants' Failure to Provide a Compliant Tip-Credit Notice**

Pursuant to the FLSA, before claiming a tip credit against minimum wage, employers are required to provide an FLSA-compliant notice. *Rafferty's v. Denny's Inc.*, 13 F. 4th 1166, 1192-93 (11th Cir. 2021). An employee who is not properly informed of the tip credit provisions, is "entitled to the full minimum wage for every hour worked." *Nail v. Shipp*, 2019 WL 3719397, at *6 (S.D. Ala. Aug. 6, 2019) (citing *Inclan v. New York Hosp. Grp., Inc.*, 498 (S.D.N.Y. 2015)). "[A]n employer who fails to provide information required by Section 203(m) of the FLSA regarding the tip-credit and use of tip pools, cannot use the tip-credit provision and therefore must pay the tipped employee at least the minimum wage, and allow the employee to keep all tips received." *Santana v. Duke, LLC*, 2017 WL 2608808, at *6 (M.D. Fla. May 16, 2017), *report and recommendation adopted*, 2017 WL 2600752 (M.D. Fla. June 15, 2017) (citations omitted).

"If an employer pays an employee below minimum wage, the employee may recover the difference between the hourly minimum wage and the hourly wage she received for work she performed." *Groeschel v. Casey Key Fish House, Inc.*, 2019 WL 1093450, at *2 (M.D. Fla. Feb. 27, 2019) (citing *Wallace v. The Kiwi Group*, 247 F.R.D. 679, 682 (M.D. Fla. 2008); *see Santana*, 2017 WL 2608808, at *6 (holding that due to Defendants' notice violations, plaintiff was owed the difference

between what he was paid and the minimum wage for all hours worked); *see also* 29 U.S.C. § 203(m).

Additionally, "the sharing of tips with managers invalidates the tip credit and requires the employer to pay the full minimum wage." *Miller v. Garibaldi's Inc.*, 2018 WL 1567856, at *4 (S.D. Ga. Mar. 30, 2018) (citing *Beaudry v. Emperor's Gentleman's Club. Inc.*, 2015 WL 10844157, at *1 (M.D. Fla. Apr. 6, 2015)); *Washington v. International Follies, Inc. d/b/a Cheetah, et al.*, 2020 WL 10223307, at *5 (N.D. Ga. Feb. 27, 2020).

### C. Plaintiffs are Entitled to Damages in an Amount Equal to the Tip Credit Retained by Defendants, Plus Unlawfully Withheld Tips Due to Defendants' Inclusion of Management in the Tip-Pool

"Any employer who violates section 203(m)(2)(B)[1] of [the FLSA] shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

When an employer fails to provide adequate notice as required pursuant to 29 U.S.C. § 203(m), an employer must "*allow[] Plaintiff to keep all tips received*." *Santana*, 2017 WL 2600752, at *6 (citing *Bennett*, 2017 WL 894624, at *2)

---

[1] An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit. 29 U.S.C. § 203(m)(2)(B).

(emphasis in original) (holding Plaintiff was entitled to the tips he was required to contribute to the invalid tip pool). Further, when a manager with an ownership interest in the business participates in the tip pool and retains tips, an employee's damages are an award of the illegally retained tips, as well as the tip credit. *Holloway v. Rocchio Tunnel Marketplace Enterprises, LLC*, 2016 WL 4411346, at *3 (S.D. Fla. Feb. 29, 2016) (citing *Chung v. New Silver Palace Rest., Inc.*, 26 F. Supp. 2d 220, 230 (S.D.N.Y. 2002); *see also Layton v. Mainstage Mgmt., Inc.*, 2022 WL 2760533, at *3 n. 2 (N.D. Tex. May 3, 2022) (holding that Plaintiffs may recover misappropriated tips improperly withheld due to defendant's invalid tip pool practices).

### D.    Plaintiffs are Entitled to Unpaid Overtime Wages

Employers must pay employees at a rate equal to one and one-half times their regular rate of pay for all hours worked in excess of forty hours per week. 29 U.S.C. § 207. "[T]he 'regular rate' for a tipped employee includes 'both the direct wage and any tip credit.'" *Reyes v. Topgolf Int'l, Inc.*, 2018 WL 3999684, at *5 (N.D. Tex. Aug. 2, 2018), *report and recommendation adopted,* 2018 WL 3998029 (N.D. Tex. Aug. 21, 2018) (citations omitted).

"A tipped employee's regular wage—for purposes of calculating overtime pay—equals the wage she was paid plus the employer's tip credit." *Groeschel v. Casey Key Fish House, Inc.*, 2019 WL 1093450, at *3 (M.D. Fla. Feb. 27, 2019);

*see* 29 C.F.R. § 531.60; *see also Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 500 (S.D.N.Y. 2015) (holding defendant liable for incorrectly paying overtime wages, without a tip credit allowance); *Rosas v. Nunez, Inc.*, 2010 WL 11600977, at *3 n. 4 (N.D. Ga. Sept. 30, 2010) (granting summary judgment in favor of plaintiffs on their overtime claim and calculating plaintiffs' damages by "subtracting the amount they were actually paid by Defendants from the amount they should have been paid using the statutory minimum wage[.]").

### E.    Plaintiffs' Damages

With respect to his FLSA retaliation claim, Plaintiff Wang seeks the following damages:

1.    **Full back pay**, pursuant to 29 U.S.C. § 216(b); *see Risco v. Mu Mu Inc.*, 2020 WL 13573501, at *1 (N.D. Ga. Aug. 3, 2020) (awarding plaintiff lost wages under the FLSA due to a retaliatory termination); *see also Snapp v. Unlimited Concepts, Inc.,* 208 F. 3d 928, 934 (11th Cir. 2000) (noting that 29 U.S.C. § 215(a)(3) explicitly empowers courts to award lost wages to remedy a retaliatory firing).

Plaintiff Wang calculates his back wages as approximately $2,200.00 because he was making approximately $1,100 per month while working for Defendants and was out of work for approximately

two (2) months following Defendants' retaliatory termination of his employment.

2.   **Liquidated damages**, pursuant to 29 U.S.C. § 216(b), in the amount of $2,200.00.

3.   **Compensatory damages,** in the amount of $30,000.00.  *See Moore*, 708 F.3d at 1238 (upholding jury's $30,000.00 compensatory damages award to plaintiffs); *see also Bogacki,* 370 F. Supp. 2d at 1205 (allowing plaintiff to amend her complaint to seek compensatory damages for emotional distress in an FLSA retaliation case).

4.   **Post-judgment interest** at the applicable rate.

5.   **Attorneys' fees and costs** incurred through trial and post-trial briefing with respect to Plaintiff Wang's retaliatory termination claim.  *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *see also Risco*, 2020 WL 13573501, at *2 (awarding attorneys' fees in an FLSA case).[2]

---

[2] The vast majority of attorneys' fees and all costs incurred in this case were incurred pursuing all of the FLSA claims collectively.

Plaintiffs seek the following damages as to all other FLSA claims:

6.  **Unpaid minimum wages:**  Plaintiffs seek their unpaid minimum wages.

    a.    Plaintiff Rebecca A. Porter seeks her unpaid minimum wages in the amount of $15,198.85.

        i.    Calculated by multiplying the number of hours worked from approximately July 2018 to March 2021 (3,576.20) by the difference between the hourly rate paid and the federal minimum wage ($7.25 - $3.00 = $4.25).

    b.    Plaintiff Keren A. Porter seeks her unpaid minimum wages in the amount of $17,765.34.

        i.    Calculated by multiplying the number of hours worked (4,180.08) from approximately July 2018 to March 2021 by the difference between the hourly rate paid and the federal minimum wage ($7.25 - $3.00 = $4.25).

    c.    Plaintiff Wang seeks his unpaid minimum wages in the amount of $7,582.17.

        i.    Calculated by multiplying the number of hours worked (1,784.04) from approximately September 2019 to December 2020 by the difference between the hourly rate

paid and the federal minimum wage ($7.25 - $3.00 = $4.25).

d.  Plaintiff Cushing seeks her unpaid minimum wages in the amount of $832.36.

i.  Calculated by multiplying the number of hours worked (195.85) from approximately January 2021 to March 2021 by the difference between the hourly rate paid and the federal minimum wage ($7.25 - $3.00 = $4.25).

7.  **Unpaid overtime wages:** Plaintiffs Rebecca A. Porter and Keren A. Porter seek their unpaid overtime wages.

a.  Plaintiff Rebecca A. Porter seeks her unpaid overtime wages in the amount of $1,278.38.

i.  Calculated by multiplying the number of hours worked in excess of 40 hours from approximately July 2018 to March 2021 (195.05) by the amount she should have been paid for weeks in which she worked overtime ($10.88 per overtime hour), offset by the hourly rate paid ($3.00), then subtracting the amount she was actually paid in overtime wages.

    b.    Plaintiff Keren A. Porter seeks her unpaid overtime wages in the amount of $614. 64.

        i.    Calculated by multiplying the number of hours worked in excess of 40 hours from approximately March 1, 2018, to March 2021 (78.00) by the amount she should have been paid for weeks in which she worked overtime ($10.88 per overtime hour), offset by the hourly rate paid ($3.00).

8.    **Withheld tips:**  Plaintiffs seek their unlawfully withheld tips.

    a.    Plaintiff Rebecca A. Porter seeks her withheld tips in the amount of $23,550.79.

        i.    Calculated by dividing the amount of tips received each month (after the 20% tip deduction, as reflected on Plaintiff's pay stubs) by 80% to determine the total estimated gross tips actually earned per month, then multiplying by 20% to determine the amount of estimated tips withheld per month, as a result of the 20% tip deduction.[3]   These calculations, based on Defendants' records, are attached as Exhibit A.

---

[3] These calculations are based on estimates, which are necessary due to Defendants' failure to maintain records as required by the FLSA.  *See* 29 C.F.R. §§ 516.1, 516.2, 516.28.

b.   Plaintiff Keren A. Porter seeks her withheld tips in the amount of $22,668.27.

   i.   Calculated by dividing the amount of tips received each month (after the 20% tip deduction, as reflected on Plaintiff's pay stubs) by 80% to determine the total estimated gross tips actually earned per month, then multiplying by 20% to determine the amount of estimated tips withheld per month, as a result of the 20% tip deduction. These calculations, based on Defendants' records, are attached as Exhibit B.

c.   Plaintiff Wang seeks his withheld tips in the amount of approximately $10,910.68.

   i.   Calculated by dividing the amount of tips received each month (after the 20% tip deduction, as reflected on Plaintiff's pay stubs) by 80% to determine the total estimated gross tips actually earned per month, then multiplying by 20% to determine the amount of estimated tips withheld per month, as a result of the 20% tip deduction. These calculations, based on Defendants' records, are attached as Exhibit C.

    a.    Plaintiff Cushing seeks her withheld tips in the amount of approximately $1,416.00.

        ii.    Calculated by dividing the amount of tips received each month (after the 20% tip deduction, as reflected on Plaintiff's pay stubs) by 80% to determine the total estimated gross tips actually earned per month, then multiplying by 20% to determine the amount of estimated tips withheld per month, as a result of the 20% tip deduction. These calculations, based on Defendants' records, are attached as Exhibit D.

9.    **Liquidated damages:** Plaintiffs seek liquidated damages in the total amount of $101,817.48, pursuant to 29 U.S.C. 216(b), and broken down by Plaintiff as follows:

        i.    Plaintiff Rebecca A. Porter seeks liquidated damages in the amount of $40,028.02;

        ii.    Plaintiff Keren A. Porter seeks liquidated damages in the amount of $41,048.25;

        iii.    Plaintiff Wang seeks liquidated damages in the amount of $18,492.85; and

iv.   Plaintiff Cushing seeks liquidated damages in the amount of $2,248.36.

10.   **Attorneys' Fees and costs:** Plaintiffs seek their reasonable attorneys' fees and costs incurred through trial and post-trial briefing. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *see also Risco*, 2020 WL 13573501, at *2 (awarding attorneys' fees in an FLSA case).  As of the date of the filing of Plaintiffs' Trial Brief, Plaintiffs have incurred in excess of $135,580.52 in attorneys' fees and expenses, as detailed in contemporaneously maintained billing records.

11.   **Post-judgment interest:**  Plaintiffs seek post-judgment interest at the applicable rate.

Respectfully submitted, this 4th day of March 2024.

/s/ Justin M. Scott
Justin M. Scott
Georgia Bar No. 557463
Tierra M. Monteiro
Georgia Bar No. 743224
Radford Scott LLP
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@radfordscott.com
tmonteiro@radfordscott.com

Steven N. Newton
Steven N. Newton Law, LLC
Georgia Bar No.
401 Westpark Court
Suite 200
Peachtree City, Georgia 30269
Telephone: 678.837.6398
Facsimile: 678.831.0707
snnewtonlaw@gmail.com
steven@mynewtonlaw.com

Counsel for Plaintiffs

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as approved by the Court in LR 5.1(C).

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

REBECCA A. PORTER,
KEREN A. PORTER,
YUET-YUEN CHAN CUSHING
& WENJU WANG, on behalf of
themselves and all others similarly
situated,

    Plaintiffs,

v.

SU-YA CHIU &
GINZA PTC, LLC,

    Defendants/Third-Party Plaintiffs,

v.

ALVIN DAYRIT, aka ALVIN D.
BUNCAYO,

    Third-Party Defendant.

Civil Action No. 3:21-cv-00108-TCB

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 4, 2024, I sent **Plaintiffs' Trial Brief** via U.S.

Mail to Defendants Su-Ya Chiu and Ginza PTC, LLC at the address listed with the

Georgia Secretary of State:

    116 Farmington Drive
    Peachtree City, Georgia 30269

I further certify that on March 4, 2024, I sent **Plaintiffs' Trial Brief** via U.S. mail to Defendants Su-Ya Chiu and Ginza PTC, LLC at what Plaintiffs have reason to believe is Defendant Su-Ya Chiu's current physical address:

214 Palisades
Peachtree City, Georgia 30269

Respectfully submitted, this 4th day of March 2024.

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Tierra M. Monteiro
Georgia Bar No. 743224
Radford Scott LLP
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@radfordscott.com
tmonteiro@radfordscott.com

Steven N. Newton
Steven N. Newton Law, LLC
Georgia Bar No.
401 Westpark Court
Suite 200
Peachtree City, Georgia 30269
Telephone: 678.837.6398
Facsimile: 678.831.0707
snnewtonlaw@gmail.com
steven@mynewtonlaw.com

Counsel for Plaintiffs